THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| GUARANTEE INSURANCE COMPANY, | : | |
| | : | |
| Plaintiff, | : | Civil Action |
| | : | No. 5:07-cv-307 (CAR) |
| v. | : | |
| | : | |
| MERCHANTS EMPLOYER BENEFITS, INC., JIMMY J. SELPH, and DOE DEFENDANTS 1-20, | : | |
| | : | |
| Defendants, | : | |
| | : | |
| v. | : | |
| | : | |
| PATRIOT RISK MANAGEMENT OF FLORIDA, INC., f/k/a TARHEEL INSURANCE MANAGEMENT COMPANY, INC., and PAUL HALTER, | : | |
| | : | |
| Third-Party Defendants. | : | |

**ORDER ON MOTIONS TO DISMISS**

In their Answer to the Complaint filed by Plaintiff Guarantee Insurance Company ("Guarantee"), Defendants Merchants Employer Benefits, Inc. and Jimmy J. Selph (collectively "Merchants") have pleaded counterclaims against Guarantee and third-party claims against Patriot Risk Management of Florida, Inc. ("Patriot") and Paul Halter ("Halter"). For purposes of convenience, Guarantee, Patriot, and Halter are collectively referred to as "Defendants" throughout this Order. Each of the Defendants has brought a separate motion to dismiss the counterclaims and third-party claims brought by Merchants, alleging that Merchants' pleadings fail to state a claim

1

upon which relief can be granted. Upon review of the pleadings in the case and the arguments set forth by counsel, the Court finds that Merchants' pleadings are sufficient to state claims for which relief may be granted, and the three Motions to Dismiss (Docs. 15, 34, and 35) are hereby **DENIED**.

The dispute in this case centers on a series of transactions between Guarantee and Merchants. Merchants is a "Professional Employer Organization" that provides staffing and human resources services to other businesses. In its Complaint, Guarantee alleges that it contracted with Merchants to provide workers compensation and employers liability insurance for clients of Merchants, as part of a complex business relationship described as a "Staffing Program." Guarantee contends that Merchants breached this agreement by failing to forward to Guarantee $412,469.81 in premiums collected from Merchants' clients for the insurance coverage. Guarantee further contends that Merchants breached its obligation to provide collateral for a reinsurance treaty backing the Guarantee policies.

In its Answer to the Complaint, Merchants pleaded a counterclaim against Guarantee and third-party claims against Patriot and Halter. Count One of the Counterclaim/Third-Party Complaint alleges fraud by Guarantee, Patriot, and Halter. Count Two alleges "Negligent Performance of Duties" by Guarantee and Patriot. Count Three seeks to pierce the corporate veil and impose liability against Halter for the actions of Guarantee and Patriot. Count Four alleges that Guarantee, Patriot, Halter, and several unnamed "Roe Defendants" failed to maintain their corporate identities and seeks to "disregard the corporate formalities and separateness of the Plaintiff Guarantee and the Cross-Claim Defendants Patriot, Halter and the Roe Defendants 1-20 such that liability against one constitutes liability as against all." Def's Answer 21. Count Five seeks attorney's fees and Count Six seeks an accounting from Guarantee and Patriot as to all funds received from Merchants.

2

In their motions to dismiss, Defendants argue that Merchants' claims should be dismissed because its counterclaims and third-party claims fail to comply with the pleading requirements of Rules 8 and 9 of the Federal Rules of Civil Procedure and because they otherwise fail to state a claim upon which relief may be granted. Rule 8 requires any pleading that states a claim for relief to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). The rule thus establishes a liberal and simplified "notice pleading" standard that eliminates technical forms of pleading and seeks to focus litigation on the merits of a claim. See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 513-14 (2002); Levine v. World Fin. Network Nat. Bank, 437 F.3d 1118, 1120 (11th Cir. 2006). A complaint "does not need detailed factual allegations," but requires only factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, ___ U.S. ___, 127 S.Ct. 1955, 1964-65 (2007). Although the factual allegations in a complaint must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," the ultimate question is whether the complaint gives the defendant fair notice of the nature of the claim and the grounds upon which it rests. Id. Rule 8 reflects the general inclination of courts, including this Court, to address the merits of litigation and to discourage the resolution of disputes on technicalities. Motions to dismiss on the basis of "barebone pleadings" are "viewed with disfavor and rarely granted." Brooks v. Blue Cross and Blue Shield of Florida, Inc., 116 F.3d 1364, 1369 (11th Cir. 1997).

The allegations in Merchants' counterclaim and third-party claims are sufficient to provide Defendants with notice of the nature of Merchants' claims and of the essential factual basis upon which they rest. Although the allegations in the section of the Answer dealing with the

3

counterclaims are fairly skeletal, those allegations must be considered in the broader context of Merchants' Answer and of the original Complaint to which it responds. Guarantee's forty-four page Amended Complaint sets forth a detailed description of the alleged contractual dealings between the parties, in one hundred twenty-six paragraphs. Merchants' Answer presents, in addition to admissions or outright denials of the allegations in the Complaint, a significant amount of additional factual detail to dispute Guarantee's characterization of the business relationship. Between the allegations of Guarantee's Complaint, the responses to these allegations in Merchants' Answer, and the additional allegations set forth in Merchants' Counterclaims and Third-Party Claims, Defendants have fair notice of the factual contentions that form the background for Merchants' defenses and for its claims for relief, notice sufficient to enable them to pursue discovery and prepare a defense.

Count One of Merchants' Counterclaim states a fraud claim against all three Defendants. It is set forth with sufficient specificity to meet the requirements of Rule 8 as well as the special requirements of Rule 9. Rule 9 provides that a party alleging fraud "must state with particularity the circumstances constituting fraud." Fed.R.Civ.P. 9(b). It further provides that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Id. In this Circuit, courts have held that Rule 9(b) may be satisfied if the complaint sets forth:

> (1) precisely what statements were made in what documents or oral representations or what omissions were made, and
>
> (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and
>
> (3) the content of such statements and the manner in which they misled the plaintiff, and

4

(4) what the defendants "obtained as a consequence of the fraud."

Brooks v. Blue Cross, 116 F.3d at 1371. These are not rigid requirements, however, and "alternative means are also available to satisfy the rule." Id. (quoting Durham v. Business Management Associates, 847 F.2d 1505, 1512 (11th Cir. 1988)).

Merchants' fraud count alleges that Halter, acting as an agent for Guarantee and Patriot, made seven specific oral representations concerning the nature of the Staffing Program that Guarantee was to provide. It states that these representations were made prior to Merchants' entering into a relationship with Guarantee and/or Patriot. According to the Counterclaim, Halter knew that these statements were untrue when he made them. Merchants contends that it relied on the truth of these statements and that as a consequence of its reliance on them, Guarantee obtained Merchants' agreement to participate in the Staffing Program and received premiums "in the neighborhood of $1,000,000.00." Def's Answer ¶ 31. Defendants thus know exactly what Merchants will have to establish to prove its claim, and can defend themselves accordingly, by establishing either that Halter did not make the statements, that the statements were true, that Halter did not know they were untrue, that Merchants was not justified in relying on them, or that Merchants suffered no damages as a result.

In addition to their Rule 9(b) argument, Defendants offer three alternative arguments for dismissal of the fraud claim. First, they argue that Merchants cannot prove a claim for fraudulent inducement under Georgia law. Second, they argue that purported representations concerning future events or undertakings cannot constitute fraud. Third, they argue that Merchants was not justified in relying on the alleged representations, because the Staffing Program was governed by a written agreement that Merchants should have read. These arguments are more appropriate for summary

5

judgment, and the Court would prefer to consider them upon completion of discovery, with the benefit of a full factual record. At the pleadings stage, there are too many questions of fact open for exploration.

The pleadings present substantial questions of fact with regard to the very nature of the Staffing Program agreement. Although Guarantee contends that the Staffing Program was based on a written agreement, its own pleadings do not bear that contention out. Guarantee's Complaint indicates that the Staffing Program was established by an oral agreement, later confirmed in a three-page memorandum from Halter to Jimmy Selph dated October 29, 2004. Am. Compl. ¶ 9, 10. That memorandum is attached to the Complaint as Exhibit 1. On its face, the memorandum appears to be an outline of procedures for writing policies rather than a comprehensive outline of the agreement or the Staffing Program. It does not include a merger clause or entire agreement clause and is not signed by any representative of Merchants. Merchants denies that there was any binding written agreement concerning the Staffing Program. Guarantee's Complaint indicates that the Staffing Program also involved written insurance policies between Guarantee and clients of Merchants and a reinsurance treaty between Guarantee and a segregated portfolio of Caledonian Reinsurance, SPC. Guarantee alleges that the segregated portfolio was owned by "Merchants and others similarly situated to Merchants . . . through a participation agreement." (Am. Compl. ¶ 36). Although the reinsurance treaty is attached to the Complaint as an exhibit, the alleged participation agreement is not, and nor is any written agreement between Guarantee and Merchants requiring the establishment of the segregated portfolio and the reinsurance treaty. There is no reference to reinsurance in the October 24, 2004 memorandum. Nothing in any of the pleadings indicates that there was a single, unified, written agreement that set forth all aspects of the Staffing Program. Instead, the Complaint

6

creates the impression that the Staffing Program was formed through a series of oral and written agreements among the various parties involved.

Given the complex and uncertain nature of the various alleged agreements between Guarantee, Merchants, and the other entities involved in the Staffing Program, it is impossible to determine as a matter of law, at the pleading stage, that Merchants cannot prove fraud. Given that the agreements appear to have both written and oral elements, and that there is no comprehensive written agreement governing the Staffing Program, it is possible that Merchants will be able to prove that it justifiably relied on the oral representations made by Halter during negotiations. It is also possible that Merchants will be able to prove that Halter knew that those representations were false at the time he made them and that Guarantee had no present intention of providing the services or performing the obligations promised at the time the promises were made.

It is too early to determine whether Merchants will be able to prove a claim for fraudulent inducement. Under Georgia law, a party alleging fraudulent inducement must either "(1) affirm the contract and sue for damages from the fraud or breach; or (2) promptly rescind the contract and sue in tort for fraud." Megel v. Donaldson, 288 Ga. App. 510, 515, 654 S.E.2d 656, 661 (2007). From the pleadings it is unclear whether Merchants affirmed the agreement or rescinded the agreement, as indeed it is unclear what the agreement actually was. Merchants' pleadings indicate that at some time during the business relationship Merchants determined that Guarantee was not providing the services it promised and elected to discontinue its participation in the Staffing Program. Whether this action amounted to a recission, or whether Merchants' actions amounted to an affirmation of the agreement, cannot be determined without further evidence.

7

Count Two of Merchants' counterclaims alleges "negligent performance of duties" against Guarantee and Patriot. Specifically, Merchants alleges negligence in the billing of premiums; accounting and recordkeeping; claim management and supervision; payment of commissions; and processing of policy applications and cancellations. It is well settled that "a defendant's breach of a contract may give rise to a tort cause of action only if the defendant has also breached an independent duty created by statute or common law." Fielbon Dev. Co., LLC v. Colony Bank of Houston County, ___ Ga.App. ___, 660 S.E.2d 801 (2008) (quoting S & A Indus. v. Bank Atlanta, 247 Ga.App. 381, 381, 543 S.E.2d 743, 748 (2000)). A common law duty to act with reasonable and ordinary care arises when a party undertakes a task which he has no duty to perform and another party reasonably relies upon that undertaking. S & A Indus., 247 Ga.App. at 382, 543 S.E.2d at 748. In its pleadings, Merchants contends that there was no binding contract concerning the Staffing Agreement and that Guarantee and Patriot undertook these tasks voluntarily. Whether the facts will bear out this contention remains to be seen.

In Counts Three and Four, Merchants contends that Halter is personally liable to Merchants by virtue of his control over Guarantee and Patriot, and that Halter used Patriot, Guarantee, and the Roe Defendants as alter egos such that the corporate formalities against them should be disregarded and liability against any one of the Defendants should constitute liability as against all. (Def's Answer 21). Merchants is entitled to pursue discovery on these claims and present evidence that Halter was personally responsible for any damages suffered by Merchants or evidence that the corporate forms of Guarantee, Patriot, or any Roe Defendants were used to defeat justice, to perpetrate fraud, or to evade statutory, contractual, or tort responsibility. See Bulloch South, Inc. v. Gosai, 250 Ga.App. 170, 176, 550 S.E.2d 750, 756-57 (2000).

8

Count Five of the counterclaim is a claim for attorney's fees and is dependent upon Merchants' ability to recover on its substantive claims. At trial, Merchants will be entitled to recover its fees if it prevails on its claims and shows that the Defendants acted in bad faith, were stubbornly litigious, and caused Merchants unnecessary trouble and expense. Because the substantive claims cannot be dismissed, the claim for attorney's fees cannot be dismissed.

In conclusion, Merchants' pleadings in its counterclaims and third-party claims are sufficient to state claims upon which relief may be granted. This is a complex case and there are significant questions of fact with regard to the nature of the transactions and course of conduct between the parties that call for discovery and a resolution on the merits based on a full factual record, whether at trial or on summary judgment. Guarantee initiated this litigation, and extensive discovery would be required on its claims regardless of any counterclaims or third-party claims by Merchants. This discovery would very likely include discovery relevant to the questions raised in Merchants' counterclaims and third-party claims. There is therefore nothing to be gained by a premature dismissal of Merchants' claims. Accordingly, the motions to dismiss are denied.

**SO ORDERED** this 23rd day of June, 2008.

S/ C. Ashley Royal
C. ASHLEY ROYAL
United States District Judge

chw